

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

FILED
CLERK U S DISTRICT COURT
AUG 2 2 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

ENTERED
CLERK, U S DISTRICT COURT
AUG 2 4 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THE CAPITAL GOLD GROUP, INC., a Nevada corporation,<br><br>Plaintiff<br><br>v.<br><br>GOLD CAPITAL EXCHANGE, INC., a Nevada corporation; DOMAINS BY PROXY, INC., an Arizona corporation; WILD WEST DOMAINS, INC., an Arizona corporation; individual; JANET M. CARRIGER, an individual, CHRIS A. PAULICK, also known as CHRIS MARTINO, an individual; BARRY DAVIS, an individual; and DOES 1through 10, inclusive,<br><br>Defendants. | CV 06-2687 ABC (Shx)<br><br>ORDER RE: DEFENDANTS GOLD CAPITAL EXCHANGE, INC., CHRIS A. PAULICK AND CARL E. LACEY'S MOTION FOR SUMMARY JUDGMENT<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

DOCKETED ON CM
AUG 2 4 2006
BY 004

Pending before this Court is a motion for summary judgment filed by Defendants Gold Capital Exchange, Inc., Chris A. Paulick, and Carl E. Lacey ("Defendants") against Plaintiff The Capital Gold Group, Inc.

44

("Plaintiff"), which is set for oral hearing on August 21, 2006. The Court finds the above-referenced matters appropriate for submission without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the scheduled hearing date of August 21, 2006 is VACATED. After consideration of the materials submitted by the parties and the case file, the Court hereby GRANTS IN PART and CONTINUES IN PART Defendants' motion for summary judgment. The Court will discuss the date to which the motion should be continued at the scheduling conference on September 18, 2006. At that time, the court will decide whether the Defendants should file new moving papers or whether Plaintiff will simply file a new opposition followed by Defendants' reply.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Both Plaintiff and Defendants are brokers of gold coins and other precious metals. Plaintiff alleges individual Defendants Chris Paulick and Carl Lacey are two former disgruntled employees who committed trademark and copyright infringement when forming Defendant Gold Capital Exchange, Inc. to directly compete with Plaintiff. Plaintiff filed a complaint on May 3, 2006, alleging causes of action under both federal and state law for copyright infringement, trademark infringement, unfair competition, and conspiracy. All of Plaintiff's causes of action are based on four alleged acts of infringement. Plaintiff claims Defendants committed two acts of copyright infringement and two acts of trademark infringement. First, Plaintiff alleges that Defendants committed copyright infringement by copying the digital image of gold currency from Plaintiff's brochure and using it on Defendants' former website. Second, Plaintiff alleges that Defendants committed copyright infringement by copying four sentences

from Plaintiff's marketing brochure. The four specific sentences, which are recitations of historical facts, are:

- "Pre-1993 U.S. gold coins were minted in specific denominations: $1, $2.50, $3, $5, $10, and $20."
- "These coins are exempt from confiscation due to the 1933 Executive Order by President Franklin D. Roosevelt."
- "U.S. Gold coinage was released for commerce in the 1800s and remained in circulation until 1933, when they were banned from being used as legal tender."
- "Not until 1974 did gold become available for private ownership"

In Plaintiff's brochure, the sentences appear on page four, under the title "History of Gold," in the following sequence:

> "**Pre-1993 U.S. gold coins were minted in specific denominations: $1, $2.50, $3, $5, $10, and $20. These coins are exempt from confiscation due to the 1933 Executive Order by President Franklin D. Roosevelt.** Coins produced in small mintages that are in the best possible condition command the highest prices.
>
> **U.S. Gold coinage was released for commerce in the 1800s and remained in circulation until 1933, when they were banned from being used as legal tender. Not until 1974 did gold become available for private ownership**-by which time gold supplies had dwindled due to mishandling and government collections that ended in gold melting."

SCANNED

In Defendants' brochure, the sentences appear on page twenty, under the title "Pre-1933 Gold," in the following sequence:

"Pre-1933 U.S. gold and silver served as our ancestor's currency as far back as the 1830's. Due to every day use, the coins wore down, were taken out of circulation, and melted into new coins. **U.S. gold coinage was released for commerce in the early 1800s and remained in circulation until 1933, when they were banned from being used as legal tender. Not until 1974 did gold become available for private ownership.** U.S. Gold was also victims of the massive meltdown of 1933 when gold was outlawed, confiscated and much of it melted into bars and sent overseas to pay foreign debts.

**Pre-1933 U.S. gold coins were minted in specific denominations - $1, $2.50, $3, $5, $10, and $20. All of these coins are exempt from confiscation due to the 1933 Executive Order by President Franklin D. Roosevelt.**"

[emphasis added to show which sentences are identical.]

With regard to trademark infringement, Plaintiffs allege that Defendants committed two allegedly infringing acts. First, Plaintiff alleges Defendants committed trademark infringement by selecting a similar domain name, "www.bankongold.com," to Plaintiff's "Safe As Gold" mark. Defendants argue the two phrases are so dissimilar that use of "www.bankongold.com" does not constitute trademark infringement as a matter of law. Second, Plaintiff alleges that Defendants committed trademark infringement by choosing the company name, "Gold Capital Exchange, Inc." Plaintiff contends "Gold Capital Exchange, Inc." is confusingly similar to Plaintiff's company name, "The Capital

Gold Group, Inc."

On July 14, 2006, Defendants filed the instant motion for summary judgment on all claims. Plaintiff filed its opposition on July 24, 2006. Defendants replied on July 31, 2006.

## II. LEGAL STANDARD

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978). If, as here, the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. See Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)). This means that, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [that party's] favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In other words, the moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact. See id. at 325. "Instead, . . . the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is

an absence of evidence to support the nonmoving party's case." Id.

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings . . . [T]he adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. See id. at 248. However, the Ninth Circuit has held that a party cannot avoid summary judgment by submitting affidavits to contradict earlier testimony in an attempt to create "sham" issues. Kennedy v. Allied Mutual Insurance Co., 952 F.2d 262, 266-67 (9th Cir. 1991). District courts should make a factual determination as to whether the contradictions are "sham" issues or legitimate clarifications of confused deposition testimony. See id.

## III. DISCUSSION

Defendants move the Court for summary judgment as to all of Plaintiff's claims. Defendants assert there is no genuine issue of material fact as to any of the allegedly infringing acts and, thus, all of Plaintiff's claims for relief fail. Defendants further move for attorneys' fees and costs on all claims and request permission to

submit an application for attorneys' fees and costs.

As explained below, the Court finds that Plaintiff has adequately identified further discovery that would be essential to its summary judgment opposition, but only with regard to the limited issue of Defendants' alleged trademark infringement by their use of the company name "Gold Capital Exchange." Accordingly, the Court GRANTS IN PART Plaintiff's request for a continuance pursuant to Federal Rule of Civil Procedure 56(f).

However, as to all the other claims of trademark and copyright infringement, the Court GRANTS Defendants' motion for summary judgment.

**A. Defendants' Motion for Summary Judgment on Copyright Infringement Regarding Use Of Same Gold Image Found In Plaintiff's Brochure is GRANTED; Reasonable Attorneys' Fees and Costs are also GRANTED.**

Plaintiff does not oppose Defendants' request for partial summary judgment as to the alleged copyright infringement of the gold currency image shown on Defendants' former website. Apparently, Plaintiff's copyright infringement claim based upon Defendants' use of the same image of gold currency found on Plaintiff's brochure disintegrated in the face of Defendants' evidence demonstrating that Plaintiff did not own the copyright to the image. Defendant Gold Capital Exchange also presented evidence that it purchased the image from a third party which granted Gold Capital Exchange a license for it to use. Defendants first offered this evidence in opposition to Plaintiff's unsuccessful Ex Parte Application for a Temporary Restraining Order. However, Plaintiffs refused to dismiss the claim at that time and continued that refusal even when the evidence of Defendants' license to the image was further explained during the Rule 7-3 meeting.

Plaintiff has now conceded that Defendants are entitled to partial summary judgment regarding any alleged copyright infringement of the gold image. Accordingly, the Court GRANTS summary judgment as to any alleged infringement of the image of gold currency.

Further, the Court GRANTS Defendants' request for reasonable attorneys' fees and costs under 17 U.S.C. § 505 as to this claim. Defendants were forced to move for summary judgment on a claim so meritless that Plaintiff did not even attempt to justify it in Plaintiff's opposition. As Plaintiff refused to dismiss the claim before Defendants were forced to bring the summary judgment motion, payment of Defendants' reasonable attorneys' fees and costs is warranted. Defendants are to file a detailed accounting of the fees and costs associated with moving for summary judgment <u>as to this copyright claim only</u> by **Tuesday, September 5, 2006.** Plaintiff's opposition, if any, is limited to the reasonableness of the fees and costs and must be filed by **Tuesday, September 12, 2006.**

**B. Defendants' Motion for Summary Judgment on Copyright Infringement Regarding Use Of Same Four Sentences Found In Plaintiff's Brochure is GRANTED; Attorneys' Fees and Costs Are DENIED.**

The Court finds that Defendants are entitled to summary judgment on the ground that the alleged copied phrases, such as "U.S. Gold coinage was released for commerce in the 1800s and remained in circulation until 1933, when they were banned from being used as legal tender." and "Not until 1974 did gold become available for private ownership," are not protected elements of the Plaintiff's copyrighted brochure because they lack originality.

Plaintiff contends even a small taking may sometimes be actionable. <u>See, e.g.</u>, <u>Harper & Row Publishers, Inc. v. Nation</u>

Enterprises, 471 U.S. 539, 565, 105 S.Ct. 2218, 2233, 85 L.Ed.2d 588 (1985) (ruling that taking 300 words from presidential memoirs not fair use when copied words were "the heart of the book"). However, facts contained in a work are not protected by copyright. Id. at 547-48 (1985). The copyright laws protect "original works of authorship," but the protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102. In other words, it is only the original expression of an idea, not the idea being expressed, which enjoys copyright protection. See Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 207 (9th Cir.1988). The ideas contained in a copyrighted work may be freely used by all so long as the copyrighted original expression is not appropriated. Landsberg v. Scrabble Crossword Game Players, Inc., 736 F.2d 485, 488 (9th Cir.), cert. denied, 469 U.S. 1037 (1984).

In fact, the narrow scope of protection afforded a factual work is illustrated in Narell v. Freeman, 872 F.2d 907 (9th Cir.1989). In Narell, the Ninth Circuit found that several instances of identical phrases plus numerous paraphrases were not of protected material. 872 F.2d 907, 912 (9th Cir.1989). In that case, the copyrighted work was a nonfiction text describing the history of Jews in San Francisco. The defendant admitted in deposition that she had copied both historical facts and "language" from the copyrighted work. However, despite the admitted copying, summary judgment was entered in favor of the defendant. The Ninth Circuit affirmed on the grounds that nothing that was copied constituted protected expression:

"Freeman did copy a few phrases from Narell: "rekindle old

memories," "staggering network," "river wound its way between muddy banks crawling with alligators," "hordes of gold seekers," "pitched overboard," "cow path," "shanties and corrugated [iron/steel] shacks ... were crowded together," and "beach was strewn with boxes, bales." Ordinary phrases are not entitled to copyright protection. **Phrases and expressions conveying an idea typically expressed in a limited number of stereotyped fashions are not subject to copyright protection."**

SCANNED

Id. at 911 [emphasis added][internal citations omitted]. The defendant's borrowings did not take a "sequence of creative expression," as opposed to an ordinary phrase, and therefore were not infringing." Id. at 911 (quoting Salinger v. Random House, Inc., 811 F.2d 90 (2nd Cir.1990)). The distinction between "an ordinary phrase" and a "sequence of creative expression" borrowed by the Narell court from Salinger is based on the degree of creativity utilized in the expression. Similarly, even if Plaintiff's discussion of historical facts was placed on an original sequence, Defendants in this case did not copy that sentence sequence.

Another example of the limited protection available to factual compilations is found in Worth v. Selchow & Righter Co., 827 F.2d 569 (9th Cir.1987), cert. denied, 485 U.S. 977 (1988). There the copyrighted works were two encyclopedias of trivia, each containing 6,000 facts selected by the plaintiff author. The defendants admitted consulting the copyrighted works in developing the 6,000 trivia questions contained in each edition of their board game "Trivial Pursuits." Again, the Ninth Circuit ruled that the use of the factual content did not constitute infringement. The verbatim repetition of

certain words in order to use the nonprotectable facts is also noninfringing, as it constitutes "mere indispensable expression" of particular facts or ideas. See Frybarger, 812 F.2d at 530 (emphasis in original).

In the instant case, the four identical sentences totaling 69 words which are found in Defendants' brochure as well as Plaintiff's brochure do not constitute protected expression. The four specific sentences in Plaintiff's brochure are mere recitations of historical facts and are not used in the same sequence in Defendants' brochure. Further, the sentences are under different headings and found in different places within the brochures. In Plaintiff's brochure, the sentences can be found on page four under a heading titled "History of Gold." However, in Defendants' brochure then sentences are found on page twenty under the heading "Pre-1933 Gold."

As in Narell, Defendants did not copy any "sequence of creative expression." Rather, Defendants copied only individual, unconnected one-sentence historical facts using commonplace and stereotyped phrasing. Furthermore, the facts copied are similar to the verbatim language found in Worth. Accordingly, based upon all of the factors, the Court GRANTS summary judgment on all claims as to the use of the four sentences in the Defendants' brochure.[1] However, the Court finds that Defendants are not entitled to attorneys' fees and costs as to this issue.

**C. Defendants' Motion for Summary Judgment on Trademark Infringement regarding "www.bankongold.com" is GRANTED, Attorneys' Fees and Costs Are DENIED.**

---

[1]It is unnecessary to reach the issues of substantial similarity and fair use because no protected expression was copied.

As explained below, the Court finds that there is no likelihood of confusion between Defendants' former website "www.bankongold.com" and Plaintiff's logo "safe as gold." For a plaintiff to prevail on a claim for trademark infringement under Section 1114 of the Lanham Act, it must establish that (1) it has a protected interest and (2) the defendant's use of its marks creates a likelihood of confusion, thereby infringing upon that interest. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). "Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1454 (9th Cir. 1991). The Ninth Circuit has enumerated a non-exclusive set of factors relevant in determining likelihood of confusion, including (1) the strength of the plaintiff's mark, (2) the proximity of the goods, (3) the degree of similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) the defendant's intent in selecting the mark and (8) likelihood of expansion of the product lines. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).

The most pivotal Sleekcraft factor in the instant case is the degree of similarity of the marks. Similarity of the marks is tested on three levels: sight, sound, and meaning. Id. at 351. With regard to the visual appearance, or "sight" level, of the two phrases, the terms "www.bankongold.com" and "Safe As Gold" look different. The only similarity between the two is the use of the word "gold." Likewise, the two terms do not sound alike either;

"www.bankongold.com" and "Safe As Gold" cannot be confused when the phrases are spoken.

As to meaning, the word "bank" has various meanings and can be used as a noun or a verb. For example, the following are all definitions of the word "bank": a group or series of objects arranged together in a row or a tier; establishment for the custody, loan, exchange, or issue of money; a place where something is held available. Merriam-Webster Online Dictionary 2006, www.m-w.com. The term "bank on" may also mean "to depend or rely on." Merriam-Webster Online Dictionary 2006, www.m-w.com. The word "safe" also has various meanings and can be used as a noun or adjective. For example, the following are all definitions for the word "safe": free from harm or risk; secure from threat of danger; successful at getting to a base in baseball without being put out; unlikely to produce controversy or contradiction; a place or receptacle to keep articles (such as valuables) safe. Merriam-Webster Online Dictionary 2006, www.m-w.com. The terms "bank" or "bank on" and "safe" or "safe as" do not mean the same thing. Further, in the instant case the terms are not even used in the same context; "bank on" is used as a verb in "www.bankongold.com" whereas "safe" is used as an adjective in "Safe as Gold." As such, the terms "www.bankongold.com" and "Safe As Gold" do not look alike, sound alike or mean the same thing. Thus, there is no degree of similarity between the marks.

Another especially relevant Sleekcraft factor in this case is the strength of Plaintiff's "Safe As Gold" mark. A mark which is inherently distinctive, such as an arbitrary or fanciful mark is given the full amount of protection from infringing uses. Sleekcraft, 599 F.2d at 349. On the other end of the spectrum, a descriptive mark,

which describes the product it purports to sell, is not protected unless secondary meaning is shown. Secondary meaning is achieved only if the public has learned to associate the author with the thing described. See Coca-Cola Co. v. Koke Co., 254 US 143, 146 (1920). Between the protected status of an arbitrary or fanciful mark and the unprotected status of a descriptive mark lies the suggestive mark. Sleekcraft, 599 F.2d at 349. A suggestive mark subtly connotes something about the product. Id. "Safe as Gold" is a descriptive mark as it describes what it means to sell, which is gold. Further, Plaintiff has not submitted any evidence to suggest that the logo has any secondary meaning and that the public has learned to associate the term "safe as gold" to buying gold from Plaintiff. As such, the mark "safe as gold" is descriptive with no secondary meaning and thus, afforded no protection from infringing uses.

With regard to the remaining Sleekcraft factors, they are either irrelevant in the instant case or also weigh against Plaintiff. As to proximity of goods, this factor assesses whether the relatedness of the goods in question is so close as to put the public in danger of assuming that there is some association between the parties' product when no association actually exists. Sleekcraft, 599 F.2d at 350. While both Plaintiff and Defendants are in the business of selling gold coins and currency, this factor is irrelevant to the instant case because the likelihood of the public associating the website "www.bankongold.com" with either Plaintiff or Defendants is nonexistent, as the website "www.bankongold.com" does not mention either Plaintiff or Defendants' products or services. As to the evidence of actual confusion factor, Plaintiff has offered no evidence that anyone was confused between "Safe As Gold" and

"www.bankongold.com." With respect to marketing channels, there is no evidence that Defendants' former website "www.bankongold.com" was marketed through any channels other than the Internet. Plaintiff also has not offered any evidence that Plaintiff marketed gold through the use of the Internet. As such, the marketing channels factor is irrelevant with respect to the "Safe As Gold" and "www.bankongold.com" marks. The intent factor weighs in favor of Defendants, as Defendant Chris Paulick has declared that "www.bankongold.com" was prompted by his personal email address "bankonclyde@aol.com". (Paulick Decl. ¶ 2). With regard to likelihood of expansion, in the instant case, there is no likelihood of Defendants' expanding "www.bankongold.com" because it no longer advertises Defendants' company. As to the last factor, regarding the type of goods and purchaser care, it is irrelevant in the instant case because neither Plaintiff nor Defendants have offered any evidence to refute the presumption that the standard in assessing the likelihood of confusion to the public is that of "the typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353. Although the Plaintiff has failed to raise a genuine issue of material fact as to the likelihood of confusion, the Court finds that Defendants are not entitled to attorneys' fees and costs as to this issue.

**D. The Court GRANTS IN PART Plaintiff's Request for A Continuance Pursuant to FRCP 56(f) With Respect to Defendants' Motion for Summary Judgment Regarding The Alleged Copyright Infringement of Defendants' Use of The Company Name "Gold Capital Exchange, Inc."**

Plaintiff requested a continuance as to the trademark infringement claims of the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f) in its opposition. (Smigelski

Decl. ¶ 8.) Defendants replied on July 31, 2006. Although Plaintiff's request was not a model of clarity, the Court understood Plaintiff to be requesting a continuance for both the claims regarding trademark infringement but not for the claims regarding copyright infringement. Having reviewed the papers submitted by the parties, as well as the case file, the Court GRANTS IN PART Plaintiff's request. Specifically, the Court grants Plaintiff's request only with regard to Plaintiff's claim for Trademark Infringement based on Defendants' use of the name "Gold Capital Exchange" and all claims for relief based upon that alleged trademark infringement. A district court has discretion to continue a motion for summary judgment where "the opposing party needs to discover essential facts." California Union Ins. Co. v. American Diversified Savings Bank, 914 F.2d 1271, 1278 (9th Cir. 1990) (citing Fed. R. Civ. P. 56(f); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987)). "Under Rule 56(f), an opposing party must make clear what information is sought and how it would preclude summary judgment." Garrett, 818 F.2d at 1518 (citations omitted). Although Plaintiff's request for a continuance has numerous shortcomings, the Court is persuaded that Plaintiff has sufficiently demonstrated the need for a limited amount of additional discovery to support its opposition. First, the Court is unimpressed by the efforts of all parties to present admissible evidence to the Court in this motion. The Court admonishes Defendants that it is not the Court's responsibility to either conduct discovery or verify a party's allegedly admissible and factual evidence in support of a motion. For example, it is Defendants' responsibility as officers of the court to submit verified domain names. It is not the responsibility of the Court to "type in the domain names to verify"

(Reply, 24:15) or to verify those names with the U.S. Trademark Office and local state trademark offices, as Defendants have the temerity to suggest. (Reply 24:25-6).

Further, the Court finds that Plaintiff has adequately identified further discovery that would be essential to its summary judgment opposition, especially in light of the fact that Defendants admit that Plaintiff in its opposition correctly identified Defendants' numerous incorrect citations to various trademarks using the terms "gold" and "capital." (Reply 25:5-7) Although Plaintiff's request under Rule 56(f) is not as specific or detailed as it should have been, in view of the fact that this case was filed less than four months ago and in light of the defects in Defendants' evidence, the Court finds that Plaintiff has satisfied the requirements of Rule 56(f). Therefore, the Court, in its discretion, will continue the motion to allow Plaintiff to complete further discovery with regard to the limited issue of Plaintiff's claim for Trademark Infringement based on Defendants' alleged use of the name "Gold Capital Exchange" and all claims for relief based upon that alleged trademark infringement.

For the foregoing reasons, the Court GRANTS IN PART Plaintiff's request for a Rule 56(f) continuance. The Court will discuss new dates with the parties at the scheduling conference on September 18, 2006. Upon receipt of all pleadings, the Court will either take the matter under submission, or schedule a hearing, if necessary.

**IV. CONCLUSION**

For the reasons articulated herein, the Court GRANTS IN PART and CONTINUES IN PART Defendants' Motion for Summary Judgment as follows:

1. Defendants' Motion is GRANTED on all claims as it relates to the alleged copying of the image which Plaintiff was using in

Plaintiff's brochure;

2. Defendants' request for attorneys' fees is GRANTED, but only as to the claims regarding the alleged copying of the image which Plaintiff was using in Plaintiff's brochure.

3. Defendants' Motion is GRANTED on all claims as it relates to the alleged copying of four sentences found in Plaintiff's brochure;

4. Defendants' Motion is GRANTED on all claims as it relates to the alleged trademark infringement for using the domain name "www.bankongold.com; and

5. Defendants' Motion is CONTINUED on all claims as it relates to the alleged trademark infringement for using the name "Gold Capital Exchange."

**IT IS SO ORDERED.**

**DATED:** August 22, 2006

**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**